UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNIVERSITY HOUSE BATON ROUGE, LLC, | CIVIL ACTION |
| Plaintiff, | No. _____ |
| v. | SECTION |
| LMK BATON ROUGE CONSTRUCTION, LLC, | JUDGE |
| Defendant. | MAGISTRATE |

## COMPLAINT

Plaintiff University House Baton Rouge, LLC ("University House"), by its undersigned counsel, brings this Complaint against Defendant LMK Baton Rouge Construction, LLC ("LMK"), hereby alleging as follows:

## INTRODUCTION

1.      This is a breach of contract claim brought by University House seeking damages from LMK.  University House bought a large residential housing building at 740 West Chimes Street, Baton Rouge, Louisiana near the campus of Louisiana State University (the "Property") in October 2015, from an affiliate of Landmark Properties, Inc. ("Landmark") of Athens, Georgia.  The Property was subsequently discovered to have substantial defects in workmanship and construction, including without limitation pervasive leaking and mechanical defects that

8453880_6

have caused severe disruption of tenants and millions of dollars in damages and necessary repairs.

2.    As part of the transaction for the Property, Defendant LMK, the general contractor on the project, provided University House with an October 19, 2015 Contractor Warranty agreement (the "Contractor Warranty").

3.    In the Contractor Warranty, LMK warranted that its work on the building would be free from defective workmanship and materials, would be completed in accordance with the project plans and would be in compliance with applicable laws and regulations. The Contractor Warranty provided that University House could demand that LMK repair, replace or pay for any work on the building which is not in conformance with such warranty ("Nonconforming Work") as to which University House gave written notice prior to October 2, 2016.

4.    During the warranty period, University House discovered multiple instances of defective workmanship and materials.  It also uncovered work done by LMK that significantly deviated from the project plans.

5.    University House provided several, detailed written notices to LMK about this Nonconforming Work prior to the October 2, 2016 deadline.  These notices specified the Nonconforming Work and provided diagrams, photographs and other backup materials to identify the nature and extent of the Nonconforming Work.

6.    After University House supplied LMK with notice of the Nonconforming Work, the parties discussed options to repair and remediate the damages covered under the Contractor Warranty.

7.    LMK failed to effect the required repairs.  To protect the Property from further damage, and with notice to LMK, University House has hired contractors to effect the repair and

2

8453880_6

remediate at least some of the Nonconforming Work. The remediation efforts necessitated by the Nonconforming Work have been extensive, costing in excess of $2.5 million to date, and expected to cost several million dollars more.

8.    University House provided LMK with invoices and supporting documentation for remediation, including an engineering report outlining the necessary repairs. Indeed, LMK requested and conducted an inspection of the Property to assess the extent of the Nonconforming Work and necessary repairs.

9.    Despite repeated requests from University House, LMK has failed to pay for the remediation work, or otherwise honor its obligations under the Contractor Warranty. LMK has not reimbursed University House for any of the remediation costs for Nonconforming Work, and, despite demand, has not effected or committed to effect any repairs.

## THE PARTIES

10.    Plaintiff University House is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Chicago, Illinois. Through a series of limited liability companies, University House is ultimately owned by the Ministry of Finance of Singapore; the Canada Pension Plan Investment Board, a Canadian crown corporation headquartered in Toronto; and other individual investors, none of whom is a citizen of Georgia. None of the intermediate entities are organized under the laws of Georgia or are a citizen of Georgia.

11.    Defendant LMK is a Louisiana limited liability company, domiciled in Baton Rouge, Louisiana, and licensed to do and conducting business in the State of Louisiana. Upon information and belief, the sole member of LMK is Landmark Urban Construction, LLC, a Delaware limited liability company headquartered in Athens, Georgia. Upon information and

3

8453880_6

belief, Landmark Urban Construction, LLC has two members, JWR Manager, LLC and Landmark Collegiate Development, LLC.  Upon information and belief, JWR Manager, LLC's sole member and organizer is David K. Brown, a citizen of Georgia domiciled in Atlanta, Georgia.  Upon information and belief, David K. Brown is also the sole member and organizer of Landmark Collegiate Development, LLC.  LMK is thus a citizen of Georgia for diversity jurisdiction purposes.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the matter is between citizens of different states and foreign states.

13.    This Court has personal jurisdiction over the Defendant because the Defendant transacted business within Louisiana and breached its contract within Louisiana, giving rise to harm in Louisiana.

14.    Venue is proper in this Court under 28 U.S.C. § 1391(b), because the Defendant resides in this district, and a substantial part of the events giving rise to the claims occurred in this district.

## FACTS

15.    On or about October 19, 2015, University House purchased the Property, a residential housing building designed for students of Louisiana State University and located at 740 West Chimes Street, Baton Rouge, Louisiana, from The Standard at Baton Rouge, LLC ("Seller").

16.    On closing, and as a condition of the transaction between University House and the Seller, Seller caused LMK, the general contractor on the building project, to provide the

4

8453880_6

Contractor Warranty to the benefit of University House. The Contractor Warranty, dated October 19, 2015, is attached hereto as Exhibit 1.

17. On information and belief, LMK and the Seller are owned by and controlled by the same principals, and are both affiliated entities of Landmark, a student housing developer based in Athens, Georgia.

### *The Warranty Agreement*

18. LMK warranted in the Contractor Warranty that its work would be free from materially defective workmanship, would be completed substantially in accordance with the plans and specifications, and would be in material compliance with applicable laws, regulations, and building codes.

19. LMK agreed, among other things, to repair, correct, or replace Nonconforming Work at its own cost, upon written notice from University House of such Nonconforming Work.

20. In addition, LMK agreed "to pay the cost of repairing all damage to other property resulting from the Nonconforming Work and to pay the cost and expenses of replacing other property which may be damaged or disturbed during corrections and repairs to the Nonconforming Work, and in otherwise making good any defects . . . ." (Contractor Warranty, § 1.)

21. The Contractor Warranty provided for speedy action by LMK in the event of Nonconforming Work. LMK agreed to effect any such repairs within ten days of receiving notice from University House of Nonconforming Work. In the event tenants would be reasonably expected to terminate their leases, or new tenants would be unwilling to enter into leases, LMK agreed to commence repairs or replacements within three business days. (*Id.*)

5

22. In the event of an emergency or risk of imminent additional damage, LMK agreed University House could commence repairs or replacements immediately without invalidating the Contractor Warranty. (*Id.*)

23. In the event that LMK did not engage in repair or remediation within the required time period, University House was entitled to "engage the services of an alternative developer or contractor to repair or replace the Nonconforming Work," and University House can then "charge such costs" to LMK and demand from LMK "reimbursement for all losses suffered by Purchaser on account of the Nonconforming Work." (*Id.*)

24. The parties also agreed that if a party were required to employ attorneys to enforce a right under the Contractor Warranty, "the prevailing party shall be entitled to recover court costs and reasonable attorneys' fees and costs actually incurred in connection therewith." (*Id.* at § 9.)

25. LMK designated Landmark as its representative to receive notices and other official communications under the Contractor Warranty. (*Id.* at § 4.)

*University House Gives Notice of Multiple Defects and Nonconforming Work*

26. University House took possession of the Property on or about October 19, 2015.

27. Between October 19, 2015 and October 2016, and particularly in August and September 2016, University House discovered multiple instances of Nonconforming Work at the Property.

28. University House gave detailed written notice to LMK (and its counsel) about the Nonconforming Work, including in letters to LMK dated September 29, 2016 and September 30, 2016. These notice letters provided detailed written and photographic descriptions of the problems at the Property for which LMK is responsible.

29.	LMK did not respond to the notice letters within the ten-day period provided for in the Contractor Warranty, nor did it effect or even begin repairs within that period.

30.	Following University House's notices to LMK of the Nonconforming work, the parties began discussing the items and the planned remediation for them. University House identified and discussed the discovered Nonconforming Work by email and in person with Manhel Malhi and Joel Gregory, both representatives of Landmark.

31.	By August 2016, the Property suffered from water damage, microbial growth, and other moisture-related damages, as well as from sewage backups and fire alarm system failures, all caused by LMK's Nonconforming Work. With students returning to campus in mid-August, immediate repair and remediation of the damages was essential to prevent further damage to the Property and protect tenant safety.

32.	In August 2016, after discussing the necessary repairs and remediation with Landmark, University House engaged Interstate Restoration, a vendor specializing in water damage remediation. Interstate Restoration began remediation efforts in August 2016 and has continued services through the filing of this Complaint. Landmark did not object to University House's retention of Interstate Restoration.

33.	On or about November 23, 2016, University House received an Intrusive Testing Observation Report (the "Engineering Report"), prepared by SBSA, Inc., an engineering firm specializing in civil and structural engineering assessments. The inspector conducted on-site observations to examine the general construction of the Property and provide information regarding the existence, approximate location, and nature of Nonconforming Work at the Property.

7

34. The 128-page Engineering Report confirmed numerous instances of Nonconforming Work caused by LMK and offered preliminary repair recommendations based on the observed Nonconforming Work.

35. On December 14, 2016, University House sent another letter to Landmark, attaching the Engineering Report and an invoice for preparing the report. University House invited LMK to review the scope of work and contractor bids to conduct necessary repairs.

36. In the same December 14, 2016 letter, University House attached initial invoices from Interstate Restoration, then totaling $891,344.74, for services rendered in August, September, and October 2016 to remediate water damages caused by the Nonconforming Work. University House requested payment of these invoices by December 28, 2016.

*LMK's Breach*

37. On December 23, 2016, after months of discussing and acknowledging Nonconforming Work at the Property, LMK sent a letter to University House disputing the claim and refusing to pay for remediation and repairs.

38. In the months preceding the dispute letter, LMK actively participated in meetings, building walks and inspections, and was aware of actual repairs taking place as to Nonconforming Work. LMK provided no explanation for its sudden change of position.

39. University House had no knowledge of the Nonconforming Work prior to October 19, 2015. The Nonconforming Work was not identified on a property condition report or other similar report before October 19, 2015.

40. Between October 19, 2015 and mid-August 2016, whenever University House notified LMK (through Landmark) of what appeared to be instances of water damage from Nonconforming Work, LMK purported to perform repairs, but in actuality instructed its

8

8453880_6

subcontractors to complete only minimal repairs of drywall and paint designed to obscure the underlying defects and not to repair them.

41.    University House has not given LMK any written acceptance of Nonconforming Work nor waived any of its rights under the Contractor Warranty.

42.    The damages and defects alleged by University House were not caused by abuse or alterations to the Property after the date of substantial completion by parties other than LMK, Seller, or their affiliates.  The damages and defects alleged by University House were not caused by improper or insufficient maintenance, improper operation or neglect by parties other than LMK, Seller, or their affiliates, or by normal wear and tear and normal usage.

43.    Under the warranty, LMK agreed to pay the costs to repair, correct, or replace any defective or nonconforming work or materials.

44.    To date, Interstate Restoration's invoices to repair and remediate water damage, microbial growth, and other moisture-related damages caused by LMK's Nonconforming Work total over $2.4 million. University House has also incurred over $200,000 in costs of necessary environmental and engineering consultants and lost revenues.  LMK has not paid any of these costs or losses.

45.    Additional repairs or replacements to Nonconforming Work are estimated to exceed $4 million.  LMK has not paid or agreed to pay any of these costs.

46.    LMK also agreed to pay the cost of repairing all damage to other property resulting from defective or nonconforming work or materials; the cost and expenses of replacing other property which may be damaged or disturbed during corrections and repairs; and the cost and expenses to otherwise make good any defective or nonconforming work or materials.

47. University House has suffered damages and continues to suffer damages as a result of LMK's Nonconforming Work.

## COUNT I:
### Breach of Contract / Breach of Warranty

48. University House incorporates by reference each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

49. LMK agreed to pay the costs to repair, correct, or replace Nonconforming Work under the Contractor Warranty.

50. University House provided LMK with proper and timely notice of the Nonconforming Work.

51. LMK did not make necessary repairs during the designated time period, which entitled University House to hire an alternate contractor to repair or replace Nonconforming Work.

52. LMK never fulfilled its obligations to repair, replace, or pay the cost to repair or replace Nonconforming Work under the Contractor Warranty, thus breaching its contract with University House.

53. University House has incurred in excess of $2.6 million in damages to date and anticipates it will incur, in total, in excess of $6 million to repair the Nonconforming Work and remediate the damage caused by the Nonconforming Work.

54. University House is entitled to recover the attorneys' fees it has incurred to vindicate its rights under the Contractor Warranty, as provided for in Section 9 of the Contractor Warranty.

10

8453880_6

## **PRAYER FOR RELIEF**

WHEREFORE, University House respectfully requests that this Court grant the following relief:

A.  An award of all monetary damages with interest, currently in excess of $2.6 million, including costs to repair Nonconforming Work, costs to remediate damage caused by the Nonconforming Work, lost business and internal harm, and other damages;

B.  An award of University House's costs incurred in connection with this action, including reasonable attorney fees, as provided in the Contractor Warranty, and any other fees, costs, and expenses, together with pre- and post-judgment interest; and

C.  Any other relief the Court deems just and proper.

8453880_6

Respectfully submitted,


*/s/ G. Trippe Hawthorne*
G. Trippe Hawthorne, (#23773)
William L. Caughman, III, (#22298)
Thomas D. Bourgeois, Jr. (#37043)
**KEAN MILLER LLP**
400 Convention Street, Suite 700
Post Office Box 3513  (70821-3513)
Baton Rouge, Louisiana  70802
Tel: (225) 387-0999

trippe.hawthorne@keanmiller.com
bill.caughman@keanmiller.com
beau.bourgeois@keanmiller.com

ATTORNEYS for UNIVERSITY HOUSE
BATON ROUGE, LLC

Dated:  April 5, 2017

12

8453880_6